24-11487 Rodriguez v. Imperial Brands Yes, thank you. Good morning. May it please the Court. Charles Auslander on behalf of the Rodriguez family, the appellants. This is a Helms-Burton case of, let's call it what it is, commercial piracy or exploitation for profit of confiscated property in Havana, Cuba. Based on the statute, if my clients ultimately have the opportunity to prove this case, they will show that the profits from the confiscated property belong to them. I want to tarry for a moment on the facts only to build into the personal jurisdiction issue. This was a joint venture that we alleged in the Havana cigar brand. Essentially, this is a classic example of what the Helms-Burton Act is supposed to prevent. Imperial purchased an equity interest of 50% in Havana and Tabacuba, which is essentially the Cuban tobacco monopoly, owns the other 50% of the cigar company. The joint venture then hires WPP to promote and market the Havana's products. Not a great surprise. Profit, obviously, is the commercial motive here. Based upon, we believe, a fair reading of the allegations of the second amended complaint, the trafficking continues at least through October 29, 2020. In our view, WPP purposefully availed itself of the U.S. forum. Can I ask you a question, I guess, in that we've had our first personal jurisdiction buzz phrase, like purposeful availment, okay? Right? Okay, so what's the test? In light of FOLD, I guess we know what the test is not. I've read FOLD. I don't know what the test is. So, if I'm trying to figure out how to assess your alleged facts against some benchmark, tell me what the benchmark is. Okay. Well, first I'm going to admit that I'm with the court in the sense of I'm not 100% sure, but I'm here to advocate. So, my view is that the test has been moved somewhat. The purposeful availment test under Skyhop and, I think, cases that Your Honor has authored requires a... An intercession on FOLD. I'm going to leave that between you and Chief Justice Roberts. But we know the test is not fair and honest, right? Right. So, then the question, so the question then is, is there what effectively amounts to a reasonable relationship? It doesn't have to be a strong one, and I realize that I'm coloring an adjective here somewhat, but it doesn't have to be strong, but it has to be reasonable. And in this case, just to back up for a moment, we do have by the magistrate judge, effectively affirmed by the district court, a finding that there was a plausible allegation of trafficking here. And so, then the question becomes under, if you assume, and I know my friends opposing me disagree that FOLD applies here, but we think FOLD does, what FOLD basically says is, is it reasonable under the circumstances, given the substance of the statute, and the harm done allegedly to the plaintiffs, and the strength, so to speak, of the ability of opposing multinational corporations to defend in this forum, is it all a reasonable circumstance? And let me, let me grab the statement in FOLD, which I should have at the ready, and I have less than at the ready. I apologize. Do you believe there's any distinction because FOLD was based upon Rule 4K1 opposed to 4K2? Your Honor, there's no question that it was certainly arose differently. But here, the Helms-Burton Act does specify that the intention of the legislature of Congress is to endow plaintiffs such as my clients with a remedy in the district courts of the United States. Now, I will acknowledge that that is not as perfect a concession of personal jurisdiction as in FOLD, but I would say, though, that FOLD pivots, and that's what I was looking for and couldn't immediately find, FOLD pivots and says that we need not separately consider whether the statute comports with our cases addressing circumstances under which a defendant may be deemed consistent with due process to have consented to jurisdiction. So we would suggest that gets us out of 4K1 into 4K2 where it says that, because then the opinion goes on to say, we hold the statute ties the assertion of jurisdiction to predicate conduct that in and of itself bears a meaningful relationship to the United States. So we need not further consider the matter through consent, the lens of consent. So roughly going back to Judge Newsom's observations, what we have here is a question of whether the behavior as alleged of this joint venture had a meaningful relationship, I would say a reasonable relationship to the United States. I guess, top line, you are willing to acknowledge that FOLD imposes a reasonableness limitation on the exercise of jurisdiction of the Fifth Amendment. You're not, I think the most aggressive reading of FOLD for you might be, the court really sort of assumed that maybe this sort of reasonableness analysis might apply, but it didn't quite hold that, and you know, sort of Thomas and Gorsuch say there is no limitation. But you're willing to acknowledge here that a reasonableness limitation should bind our sort of analysis. Well, I, thank you, Your Honor, for advancing my argument somewhat. Well, I don't want to start off with reasonableness, so I want to make sure that we understand. Yeah. I think that, I think that the suggestion in the majority opinion is that there has to be some, some tether. It may not have to be a causal relationship, but there needs to be some, some tether that, that can be pointed to between the, the joint venture here and, and good reason to, to bring this case to the United States. But I. Can we try to go away from the theoretical a little bit into the practical? Yes, Your Honor. To try to get to Judge Newsom's question about what the standard is. Do you have an entity, artificial entity, that is incorporated in a state within the United States, State 1, and has its principal place of business in State 2? Is alleged to have committed an extraterritorial tort. Under full, can that artificial entity be sued on a federal claim in State 3? I, I, I think the short answer is yes, Your Honor, in that the. The presence in the United States is all you need. I, I, I think, I, I, I think that the. Not all. So, for example. A company, that company that I'm referring to does two sorts of lines of business. They do line of business A in the United States, but the federal tort is supposed to affect and be related to line of business B, which the company only does in Asia. Right. Your Honor, I. Can you sue on line of business B on a federal tort in State 3? Well, Your Honor didn't, didn't use the word hypothetical, but I'm going to offer that the, the, the line of analysis here is hypothetical because we do have related conduct here by WPP. It certainly participated in and profited by the joint venture that took place in Cuba that it was hired to, into, but.  And this may be the first shot that our court gets to explain. Sometimes saying this is enough is not enough for us. Well, Your Honor. We have to provide some sort of standard, some sort of guidance to courts in the circuit about what they're supposed to do going forward. And though that's the purpose of the hypothetical that I sketched out for you. And yes, Your Honor, I, I think that the, the majority decision effectively and intentionally leaves open to the circuits how to define that, that netherworld between the, the outer Mongolia case that Your Honor referenced, the facts, and, and the United States. Clearly the concurrence, as Judge Newsom said, would, would march through that and say, there, there is jurisdiction in the United States because Congress intended it to be so. The majority opinion, to the extent that it assumes that a reasonableness analysis applies, it does build that out a little bit, right? It says what it'll depend on each case on an evaluation of several factors. Burden on the defendant. Interest to the forum. Plaintiff's interest in obtaining relief. Not surprisingly, that sounds a whole heck of a lot like fair play and substantial justice under the old test. So, I mean, we do have some guideposts here, right? Right. But I think, but I think the guideposts, Your Honor, are withdrawing. They're moving, certainly moving away from minimum contacts. And even moving away from purposeful availment that Judge Jordan was, was working to, to perhaps connect to. So, so basically, under that standard, the allegations of the Second Amendment complaint here, I believe, waltz through directly.  Well, talking about burden on the defendants, I think, I actually think the other two might favor you, but burden on the defendant seems pretty substantial. Well, I think it, I think it is substantial here, Your Honor, because in this record attached to the Second Amendment complaint, we have Imperials' precise understanding that this particular joint venture, their purchase of their 50 percent interest in Abenos could, in fact, lead them into troubled waters under the Helms-Burton Act. And so, I think that's at the record 208-, it's, it's exhibits for A and B. I don't know the page number offhand. But the narrow point being that, how can it be burdensome on a multinational corporation that with knowledge of forethought, possessing CNTR, goes into a joint venture that it knows risks its exposure as an expropriator of a national, a U.S. national's property interest, property rights. I see that my time is. One more, one more question. Yes. In this report, if I understand the magistrate judge's order correctly, you said that, before Fold, that the argument as to Imperial rested on WPP, right? Yes. Is that still the same going forward? In other words, everything rises or falls on WPP's suitability in Florida. No, I, I, I think it is fair to say, and, and I should have said in advance of Your that if, if the new standard is the Fold standard, then we need to look at the, the reasonableness of bringing Imperial into the United States to defend where it was part of a joint venture that knowingly and intentionally hired an entity that would be promoting the, the joint venture from the United States Forum. Does it make sense? And I'm going to ask your colleagues on the other side the same question. Does it make sense to just simply remand and let the district court, because that would be a new contention on your part, understandable in light of Fold, but that's not an argument that the magistrate judge thought needed to be addressed because you thought that everything rested given our previous decisions on the status of WPP. So does it make sense for us to just maybe lay out a general standard and remand and have the district court take another fresh look at this and take evidence if necessary? I, I, I think that would be a, a reasonable route to go. I do believe that on appeal we preserved this issue in, in our, in our briefs, but that said, yes, I think. Otherwise, my point is that the magistrate judge and therefore necessarily the district court did not treat WPP and Imperial separately. Right. Personal jurisdiction analysis, because under current, under then existing law, you said everything rises or falls on WPP. We're tying Imperial to WPP. That is correct. Okay. All right. Thank you, Mr. Oshlander. Thank you, Your Honor. Good morning. May it please the Court. Andrew Reese Davies representing Imperial Brands, PLC. The judgment of dismissal should be affirmed. The second amended complaint represented the plaintiff's third attempt to plead personal jurisdiction as to Imperial. It didn't do so and nothing in fold provides a reason to revisit that conclusion. Unless Rule 4K2 truly has the unbounded jurisdictional reach that seven justices were not prepared to endorse in fold, there just cannot be personal jurisdiction over this U.K. company because another foreign company in which it had an equity interest hired yet a third foreign company, a WP subsidiary, to create these globally accessible, passive social media pages to promote a product that cannot be lawfully sold in this jurisdiction, even if the ad agencies, back office, IT systems touch the United States. Judge Newsom asked the question, what is the standard post fold? The standard post fold under Rule 4K2 is the same as it was under the circuit precedent before fold. That's to say nationwide minimum contacts. Fold establishes that Congress But does nationwide minimum contacts have to be related to the tort or the cause of  That's where I think the biggest possible change might be. Well, Your Honor, fold deals with a situation where Congress has expressly created personal jurisdiction in a statute. My friend said, well, Congress in Helms-Burton created a cause of action. And that is true. But the Supreme Court has said that you cannot infer from that an intent to create personal jurisdiction. That's in the Omni Capital case itself that led to the adoption of Rule 4K2. And so the advice Is that the contacts with the United States still have to relate to the cause of action? Yes, Your Honor. Relate to or arise from in the same way that it did before fold, precisely because Rule 4K2 has a purpose that's explained to us by the advisory committee. It was there precisely to deal with the specific gap that the Supreme Court identified in Omni Capital. That's to say that there could be companies, aliens that had sufficient nationwide minimum contacts to justify jurisdiction, but not sufficient contacts with any state. And the problem in Omni Capital was that may be so, and it may be permissible as a constitutional matter, but there was no statute or rule that permitted it. And that is what Rule 4K2 did. And the idea that Rule 4K2 is Let me give you an example, and I may be so off factually that you may need to correct me, but it just off the top of the head. BMW has some manufacturing plants in the United States, right? BMW is not an American company. Can BMW be sued under 4A, 4K2 in a state other than the state of its manufacturing plants for conduct unrelated to its presence in the United States? So can BMW be sued, for example, in the Southern District of Florida for breach of contract? Well, that would be, of course, a state law claim. So we would be outside the 4K2 analysis, which is limited to federal claims. And so, no, there would have to be 14th Amendment minimum contacts under those circumstances to bring what would be essentially a diversity action, not an action based on a federal claim that could even implicate 4K2. You're right about the correction. So 4K2 wouldn't apply in that circumstance. Civil antitrust claim. Well, if the case arose from or related to minimum contacts that BMW, in this case, had created with the United States, then yes. So in that case, no, Your Honor, there would not be any basis for personal jurisdiction. It might theoretically be permissible as a constitutional matter, but there is no statute or rule that permits service under those circumstances. So it would be exactly like the problem the Supreme Court faced in OmniCapital itself. Might be constitutional, but there's no rule or statute that permits it. So you think that there still has to be some sort of connection between the context with the forum and the claim or cause of action being asserted, absent a jurisdictional hook? Absolutely, Your Honor. And that's true whether we are right that Rule 4K2 has exactly the same reach now that it had before, the reach that it had under Heroderos. And it's also true, if my friend is right, that Rule 4K2 has expanded, post-fold, to permit greater jurisdictional nexus than it had before. You know, the Supreme Court was very clear that when Congress has permitted personal jurisdiction, that's not subject to 14th Amendment minimum contacts for sure. I mean, they wrote, quote, it permits a more flexible jurisdictional inquiry than the 14th Amendment. But they also wrote that they were wary to reach further and bless more attenuated assertions of jurisdiction. And the Court really stressed just how limited the jurisdiction Congress had created for the anti-terrorism act was. First of all, the Court said these jurisdictional predicates that are sufficient for the PLO and the Palestinian Authority involve, quote, specific and narrow conduct that directly implicates issues of sensitive and ongoing concern in the respondents' relationships with the United States. It was first, conduct within the United States, and second, so-called martyr payments to those who commit terror attacks that kill or injure US nationals, and that, quote, Congress has determined promote acts of terror that may kill or injure Americans. So not the anything goes approach. It was also tied, the Supreme Court told us, to these two specifically named sui generis defendants, both of whom, quote, have decades of meaningful contacts, ties, and relations with the United States. And they also noted the narrow category of claims to which it related. It was not, quote, myriad civil liability actions, unlike Rule 4K2, which applies to every federal action. And even the concurrence when it talked about there being no limitations coming from the Fifth Amendment as to personal jurisdiction referenced twice the need for something like a clear statement rule for Congress to authorize personal jurisdiction, exorbitant personal jurisdiction that might intrude onto international law concerns. And my friend referenced the allegations against Imperial. They do all arise out of the alleged jurisdictional context of WPP. My friend references the label joint venture partner. But as he said, ABANOS was a separately incorporated entity. It was in which Imperial was just a shareholder, an indirect one at that. And this entity was controlled by the Cuban government, not by Imperial. So we are very far from a situation where you can impute contacts from Imperial down to a company in which it has a shareholding onto an advertising vendor hired by that company, ABANOS. And again, this morning, my friend said, well, the Imperial hired WPP. But no, that is not what the Second Amended Complaint says. Second Amended Complaint says very clearly and correctly that it was ABANOS that retained a WPP entity to conduct this work. And they expressly admitted that below. It's at docket number 285 at page 97, lines 5 through 25. Your Honor, I do recognize that my time is up. Could I ask Your Honor's indulgence to address very quickly two of the alternative grounds for affirmance? Can I ask you a blocking and tackling question of appellate procedure before you do so? Can we get to those without a cross appeal? Because the dismissal here was without prejudice. And most of those, it seems to me, would result in with prejudice dismissals. Your Honor, the appellees agree that this court cannot grant greater relief than the district court did on this posture. That does not mean that the court can't reach the 12B6 arguments. I think the affirmance would still be without prejudice. And so theoretically, I think if the court were to determine that there is personal jurisdiction, but that this complaint doesn't plead a plausible claim, it could go back to the district court, presumably with a request for permission to amend to plead a plausible claim. We don't think they can do it. But I think that that is the answer to the question that Your Honor asked. First of all, time bar. This is a case where the untimeliness is apparent from the face of the second amended complaint. The second amended complaint identifies only two things that happened during the repose period. First of all, Imperial retained its indirect ownership interest in Habanos through October 29, 2020. But notwithstanding the efforts to conflate things, the trafficking does not consist of the ownership interest in Habanos. It consists of Habanos' use of the factory. And there is nothing in the complaint to suggest that that extended any time beyond 2013. And I don't think my adversary is going to tell you on rebuttal that they even alleged that Habanos was using the factory after 2013. Before they filed the second amended complaint, Habanos, which was then a defendant, put in the record photographs taken in 2015 and 2021 showing the derelict, abandoned interior of the factory. That's at docket number 89-3. And so what is happening now is that they are trying to conflate Habanos' time barred use of the factory with use of the factory by Tabacuba into the repose period. And you see that throughout the second amended complaint. It's really most obvious in paragraph 80 where they say first sentence, Habanos was using the factory in 2020. And then the second sentence, the continuing use is by Habanos. But there's no basis to impute Tabacuba's use of the factory to these defendants. It's just like this court's decision in Fernandez where the court said that other entities' use of confiscated property was not trafficking by the defendant, absent some basis to allege that they gained some return from it. And here WPP and Imperial are so far removed from this property that there isn't even allegation that they had any reason to know that Tabacuba had offices at the property. And finally, my friend referred to the Exhibit 4A to the second amended complaint. This is the letter. This, Your Honor, may I just very quickly? Imperial's letter from 2007 to the SEC. All that says is that Imperial knew of the existence of the statute in 2007. That proves nothing. It pleads nothing as this court held in Del Valle just a few months ago, 2025, Westlaw, 1443951 at page 5. Knowledge of the statute doesn't show knowledge that the property is confiscated or that an American national owns the claim to it. Thank you, Your Honor. Thank you very much. Good morning, and may it please the Court. Mark Fleming from WilmerHale on behalf of WPP PLC. WPP is incorporated in the bailiwick of Jersey. Personal jurisdiction is asserted solely based on allegations about its U.S. subsidiaries, subsidiaries that are themselves no longer in the case. Just a factual question. Doesn't the complaint also allege that WPP has dual headquarters in London and New York City and has a principal place of business in the United States? So it does say, it does refer to a statement made in an SEC filing about dual headquarters. There is no allegation, at least that's well-founded, based on a principal place of business. And there couldn't be. Because if there had been... But this is a facial attack on public information, so you've got to accept the allegations and the complaint is true, right? That's absolutely right, and I'm happy to do so. There isn't an allegation about principal place of business. That is a legal argument that comes up every now and then. But when Magistrate Judge Otazo Reyes asked counsel for the plaintiffs whether they asserted that there was a general jurisdiction over WPP in New York, they said no. And had there been a principal place of business, that would have exposed them to personal jurisdiction in New York and that would have meant this case had to be filed in New York because 4K2 would not apply. So there is neither an allegation nor is there a legal argument on the plaintiff's side that there is a principal place of business in New York because that would have been self-defeating. There is an allegation about dual headquarters. Was there even more of that allegation in the complaint? No, Your Honor. You can take account of the dual headquarters allegation. My point is simply... Principal place of business allegation. I don't think there is an allegation of a principal place of business. And if there were, and if you take that... Does the complaint say that WPP has dual headquarters in London and New York City and thus maintains a principal place of business in the United States? Paragraph 3-6. So that would be a legal assertion that would defeat their argument of jurisdiction in this case. If this Court were to accept that, then that would mean 4K2 does not apply because... They would have to be sued in New York. Then they would have to be sued in New York if that were accurate. And they have never... And they gave that up. That's page... That's in the hearing transcript before Judge Otaza-Reyes, docket number 341. I'll give you the precise page. It's page 167. The Court asks, is it your contention that WPP is subject to jurisdiction in New York? Counsel for the plaintiff, Mr. Rodriguez, says no. And they have to take that position. Otherwise, they'd have to go sue in New York, which they've never done. So there is no principal place of business argument in this case. The only argument is that supposedly... And I'm happy to take the allegation of dual headquarters in New York. That in itself, for the reasons that were being discussed with Mr. Rees-Davies, is not enough even after FOLD to show personal jurisdiction over WPP-PLC. Now, there might be enough to sue the U.S. subsidiaries because they are at home in New York. But they've not been sued in New York either, and they're no longer part of this case. So we think that the situation that we have here with the allegations against WPP, dual headquarters, the use by subsidiaries of servers located in the United States, and the purchase of social media platforms from companies like Twitter and YouTube, are not themselves enough even under what we can glean of a test from the FOLD case to exercise personal jurisdiction in the United States over a foreign company like WPP-PLC. As Mr. Rees-Davies was saying, the Supreme Court was very careful to continue to look to concepts like clear notice, whether the defendant could have reasonably anticipated being hailed into court here based on the contacts that the defendant had with the United States. And in the case of the Palestinian Liberation Organization and the Palestinian Authority, the court was clear that the statute not only named them in particular and said they're going to be deemed to have consented to personal jurisdiction, but that the jurisdiction-triggering facts and contacts were ones that had been the subject of federal regulation and covered important foreign policy issues that were very tightly connected to the contacts that the defendants in that case had to the United States. The maintaining of an office in New York, the use of alleged, the use of services in the United States, and the contracting for business by U.S. social media companies does not fit any of those criteria. So we think there's ample basis to affirm in this case for lack of personal jurisdiction. If the court were to disagree, then the dismissal... Why is the complaint alleges that the use of the servers was by both WPP or by WPP and its subsidiaries? Well, the allegation is that these companies were operating as a single entity, and there is no basis in the allegations in the complaint to pierce the corporate veil or to collapse these separate corporate entities the way the plaintiff is now asserting should be done. There's no allegation that WPP exercised an unusually high degree of control over its subsidiaries. There's no allegation about the commingling of funds or that there was use by the parent entity of the subsidiaries kind of as an instrument to run its own business. These are, as the court said in Heroderos, they're the common interaction of parent and subsidiary companies. They have consolidated financial statements. They have a common legal strategy, that sort of thing. But the U.S. companies are doing the business themselves. By allegation, they were using the U.S.-based servers. Of course, as jurisdictional discovery ultimately showed, it was companies in Spain that were actually providing these services. So these facts are not going to get better. They've had the opportunity to find any kind of facts that would have supported a claim of piercing the corporate veil or treating these companies as alter ego. And the relevant paragraphs, paragraphs 46 to 54 of the complaint, are all pledged simply on information and belief. There is no basis for sending this back and suggesting that they should look into whether they can actually collapse the connections of U.S. subsidiaries with the parent based in Jersey because they haven't developed any basis for doing that. If the court disagrees with us on personal jurisdiction, the case can comfortably be affirmed on the three alternative grounds that have been briefed. Mr. Reis-Davies addressed the time bar. I do want to say one thing, if I may, about the failure to state a claim of actual trafficking by the WPP defendants. It's, I think, clear from the language of the Helms-Burton Act that a claim can't rest on an allegation that the defendant merely did business with a trafficker. It has to actually profit from the trafficking itself. And I think the reasoning of the decisions so far reinforce that. This court very recently in De Fernandez v. Seaboard Marine, which the plaintiffs reference in their latest 28J letter, says that profiting requires that the defendant take part in, control the actions of, or gain some return from the trafficking. And there's no allegation here that WPP did any of that. WPP subsidiaries are most alleged to have provided internet services to Habanos. There is no suggestion that those services turned on use of the trafficked property. Rather, these were services about tobacco products in general. They were not, as Mr. Reis-Davies indicated, done remotely in a timely period when Habanos was, by allegation, using the factory building on the property to store or manufacture cigars. Rather, the only allegation within the statute of repose has to do with Tabacuba's use of the separate building, the mixed-use building that has offices and residences in it. There's no suggestion whatsoever. Can I ask one follow-up question about my geeky appellate process? Yes, Your Honor. So when you moved to dismiss for failure to state a claim in the district court before the magistrate judge, did you move to dismiss for failure to state a claim without prejudice? I mean, I'm assuming not. I'm assuming that that motion was a motion to dismiss with prejudice because they haven't stated a claim. I believe that's correct, Your Honor. And now, are we just sort of massaging this thing on the back end because there's no cross-appeal? So Mr. Reis-Davies's answer was, well, it's true, you can't expand the relief, but I suppose you could just affirm for failure to state a claim and make your decretal language sort of, you know, dismissed or, you know, sort of such that the district court would dismiss without prejudice would leave to amend or something. I don't think Your Honor even needs to do that. I think the decretal language can simply say affirmed. And then when you've affirmed, what you've affirmed is a judgment of dismissal without prejudice. If the plaintiffs then decide that they can refile, if they have a good faith basis for refiling, then res judicata won't be a bar to it. We would, of course, have many other arguments that we would raise on the merits. But I think you just have to say affirmed, and that's all we're asking for, unless the Court has further questions. Thank you, Your Honor. Thank you, Your Honor. Can you give us a couple of extra minutes, given what we did with the other side, please? Thank you, Your Honor. So then in perhaps in reverse order, I feel like my friend has turned a facial attack on the pleading by WPP because none of that discovery, none of the affidavits regarding the limited jurisdictional discovery were filed by WPP. We've now essentially gone to a factual attack. And that factual attack should be an uphill attack because the only, call it merits, finding on trafficking in this record, in the report and recommendation by the magistrate judge, is that in fact WPP was trafficking. And so the notion that the facial attack can now on appeal by WPP be translated into a factual attack in order to essentially undo that plausibility finding, it seems like a, with very due respect, a long stretch for the appellate court where the district judge in fact limited its analysis strictly to the issue of jurisdictional jurisdiction. Let me also tussle though with my friend's arguments about the indirect-direct relationships. I'm not sure that that means anything in the context of a trafficking allegation under the Helms-Burton Act. The Helms-Burton Act talks about profit or participation in essentially an exploitative scheme with the Cuban government or others. So although we believe that we can prove that WPP profited, it certainly on the face of this allegations participated in the joint venture. And so I'm not sure that there's any legal undergirth to the argument being made by Imperial that we are somehow indirectly related to this trafficking which has been found plausibly to exist because we bought a 50 percent interest in Habanos through, I believe it's the Spanish company, Altadis. And essentially we have pled, though they disputed it and the magistrate judge found, which was not raised today, an attenuation theory which nowhere exists in the Helms-Burton Act, that somehow their behavior in this trafficking was remote when it was anything but remote. And in fact... That only goes to Imperial, right? Not to WPP. Well, it certainly goes... WPP did not have any sort of interest in the Cuban joint venture, right? That's correct. It was hired by the Cuban joint venture. So I'm sorry if I overspoke that. But as to Imperial, I do think that it's worthy at least to note that in that exhibit, they in fact said in part that the risk of U.S. sanctions related to their two non-controlled joint ventures that are affiliates of the Cuban joint ventures. And essentially they're saying the Cuban joint ventures, including their affiliates, could be materially limited by operation of sanctions administrated by U.S. Department of Treasury and under the Helms-Burton Act. It would be, with due respect to my friends, it would be tantamount to willful blindness on this record for them to say that because we had an indirect relationship, and none of these facts have been determined by the district court, because we had an indirect relationship that somehow we should be absolved of trafficking. I don't think the record supports that whatsoever. Lastly, as to the rule, Rule 4K2B talks about exercising jurisdiction consistent with the and the analysis that the court has discussed that has to be determined under FOLD. Sorry, that wasn't my last point. My very last point is that turning back to WPP, they fought, they said that they were not subject to jurisdiction in New York, so that there is a factual controversy regarding that that cannot be determined on this record. Therefore, we would ask the court to reverse the order denying or rejecting this case without prejudice on personal jurisdiction grounds and or remand for further determination. Thank you.